**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RALPH WILLIAM MCCLAIN, JR., | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SGT ALVERIAZ, LT. DOYLE, C.O. | : | |
| SHOVLIN, C.O. HUESBY, C.O. SEVERA, | : | NO.  07-5551 |
| C.O. SANCHEZ, DR. FISHTINE, and | : | |
| JOHN DOES #1-3 | : | |


<u>**MEMORANDUM**</u>

BUCKWALTER, S. J.                                                      November 25, 2008


   Currently pending before the Court is a Motion to Dismiss Plaintiff's Amended

Complaint filed by Defendant Mark Fishtine, M.D.  For the reasons which follow, the Motion is

granted in part and denied in part.

**I.  FACTUAL AND PROCEDURAL HISTORY**

   According to the facts set forth in the Amended Complaint, Plaintiff Ralph

William McClain, Jr. was an inmate at the State Correctional Institution at Graterford in

Collegeville, Pennsylvania, during the time period relevant to this case.  (Am. Compl. 1.)  At

approximately 8:00 a.m. on December 29, 2005, Defendant Sergeant Alveriaz came to Plaintiff's

cell and told him he had an appointment to see the psychiatrist, Defendant Mark Fishtine, M.D..

(<u>Id.</u> at 14.)  Plaintiff told Sgt. Alveriaz that he did not feel like going to the infirmary, since it

would have entailed being handcuffed and walking in the rain.  (<u>Id.</u>)  He stated that if Dr.

Fishtine wished to speak to him, he would have to come to his cell.  (<u>Id.</u>)

Sometime between 8:30 and 9:00 a.m., Defendant Correctional Officer ("C.O.") Huesby went around to each cell with a shower list and Plaintiff requested that his name be added.  (Id.)  Defendant C.O. Shovlin and Sgt. Alveriaz came to Plaintiff's cell at around 9:30 to 9:45 a.m. and told him it was time for his shower.  Plaintiff stripped down to his undershorts, put on his shower shoes, wrapped a towel around his waist, and grabbed his washcloth and soap. (Id.)  He was cuffed behind his back and led out his cell door.  (Id.)  As Plaintiff started to go through the B-wing door on the right, Sgt. Alveriaz blocked Plaintiff and told him to go through the D-wing door to the left, since the showers on B-wing were full.  (Id.)

When Plaintiff got to the door to the hall between A-wing and D-wing, Sgt. Alveriaz held open the door for Plaintiff.  (Id. at 15.)  There were several officers on the other side when Plaintiff entered.  (Id.)  Suddenly, Sgt. Alveriaz slammed Plaintiff into the door, grabbed his arms from behind, and held him with his face smashed against the window.  (Id.) While he was held up on the A-wing door, looking through the glass, Plaintiff saw C.O. Sanchez sitting and watching the events from her desk.  (Id. at 15-16.)  Defendant Lieutenant Doyle was in the control room and came out at this turn of events.  (Id. at 15.)  Lt. Doyle said Plaintiff was not getting a shower, but was going to see Dr. Fishtine whether he liked it or not.  (Id.)  Plaintiff stated that he had a right to refuse to go to the doctor's appointment and that he was not going to go out in the rain in his underwear.  (Id.)  In response, Lt. Doyle instructed his officers to lead Plaintiff out of the block.  (Id.)  When Plaintiff would not walk, Doyle directed the officers to "take him down."  (Id.)

At these words, multiple officers, including Defendant C.O.'s Severa and Huesby, rushed Plaintiff and slammed him on the floor.  (Id.)  After being thrown to the floor, he starting

2

cursing at the officers and was punched in the back of the head several times.  (Id. at 16.)
Plaintiff tried to kick one of the officers, after which his legs were restrained by leg irons and he
started receiving kicks to the body and punches to the back.  (Id.)

   Thereafter, Plaintiff was picked up and carried, ramming his head into the walls
three or four times, and then dropped on the floor because he was twisting and too heavy for the
guards.  (Id.)  Upon dropping Plaintiff, Defendant officers starting punching and kicking him
again.  (Id.)  One of the officers then whistled for a vehicle at the end of the walkway, and
instructed the driver to come up on the grass.  (Id.)  The officers dropped Plaintiff on the concrete
and held him down on his stomach, wearing just his boxers and shower shoes.  (Id.)  Someone
put a pillowcase over his head, picked him up, and put him in the seat of the vehicle.  (Id.)  An
officer sat behind him, put his arm around Plaintiff's neck, and held his head to the back of the
seat, strangling him and making it hard to breathe.  (Id. at 17.)

   After Plaintiff got out of the vehicle, he agreed to walk to avoid further beatings.
(Id.)  The pillowcase was taken off of his head and multiple guards escorted him to the infirmary.
(Id.)  When they arrived at the psychiatric cell, the handcuffs and shackles were removed and he
was stripped of his underwear.  (Id.)  The whole time, Plaintiff was cursing the guards for what
they were doing.  (Id.)  Defendant C.O. Severa called Plaintiff a "nigger" and swung at Plaintiff's
face.  (Id.)  Plaintiff fought back, a melee ensued, and several guards joined the fight.  (Id.)  He
was taken down on the floor again and, while he was being held down, he was punched, kicked,
and had his arms twisted.  (Id.)  After he was let up and left alone in the cell, he asked to speak to
a nurse.  (Id.)  Defendant Nurse Percilla came and Plaintiff reported his injuries, but she said she
could do nothing about it.  After the shift change, he asked the new nurse for help, to no avail.

(Id.)  He was left in the cell naked and without a blanket until he was returned to his own unit the next day.  (Id.)

On December 31, 2007, Plaintiff commenced the present federal litigation against Sgt. Alveriaz, Lt. Doyle, C.O. Shovlin, C.O. Huesby, C.O. Severa, C.O. Sanchez, C.O. Doe, C.O. Doe 2, C.O. Doe 3, and Mark Fishtine, M.D.  In his Complaint, Plaintiff alleged violations of his Eighth and Fourteenth Amendment rights.  With leave of Court, Plaintiff filed an Amended Complaint on September 26, 2008, adding as Defendants Nurse Percilla and Nurse Heather, and offering a more detailed account of the facts.  Defendant Fishtine moved to dismiss this Amended Complaint on October 9, 2008.

## II.  STANDARD OF REVIEW ON MOTION TO DISMISS

The purpose of a motion under Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of a complaint.  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  Pursuant to Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6); see also Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005).  The question before the court is not whether the plaintiff will ultimately prevail.  Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232 (1984).  Rather, the court should only grant a 12(b)(6) motion if "it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Id. (citing Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957)).  When

4

considering a motion to dismiss, the court must "accept as true allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the nonmoving party." Rocks v. City of Phila., 868 F.2d 644, 645 (3d Cir. 1989). The court, however, will not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).

## III.  DISCUSSION

In his Motion to Dismiss, moving Defendant Mark Fishtine, M.D. enumerates two bases for dismissal of the Amended Complaint against him. First, he argues that the Amended Complaint was filed after the expiration of the statute of limitations and, as such, is time barred. Second, he contends that the Amended Complaint fails to state a cognizable cause of action against him. The Court considers each assertion individually.

### A.     <u>Whether the Amended Complaint is Time Barred</u>

In his first argument, Defendant Fishtine asserts that both Plaintiff's original Complaint and his Amended Complaint were filed outside the applicable two year statute of limitations. Specifically, he claims that the actions making up the basis of Plaintiff's section 1983 claims occurred on December 29, 2005, yet Plaintiff did not file his *in forma pauperis* application and accompanying Complaint until December 31, 2007. As the litigation was not initiated prior to the December 29, 2007, expiration of his limitations period, Defendant Fishtine argues that the Amended Complaint must be deemed time barred.

Because 42 U.S.C. § 1983 does not contain a statute of limitations, courts look to 42 U.S.C. § 1988, which requires use of the statute of limitations for the state where the federal

5

court sits, unless its application would conflict with the Constitution or with federal law.[1]  Lake v. Arnold, 232 F.3d 360, 368 (3d Cir. 2000).  In Pennsylvania, the statute of limitations applicable to section 1983 suits is the two-year limitations period set forth for personal injury actions in 42 Pa.C.S. § 5524.  Ormsby v. Luzerne Cty. Dept. of Public Welfare Office of Human Svcs., 149 Fed. Appx. 60, 61 (3d Cir. 2005).  "It is axiomatic that under federal law, which governs the accrual of section 1983 claims, 'the limitations period begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action.'"  Montgomery v. DeSimone, 159 F.3d 120, 126 (3d Cir. 1998) (quoting Genty v. Resolution Trust Corp., 937 F.2d 899, 919 (3d Cir. 1991)).

As a general rule, the filing of an *in forma pauperis* application tolls the statute of limitations until leave to proceed *in forma pauperis* is granted or denied.  Richardson v. Diagnostic Rehab. Ctr., 836 F. Supp. 252, 254 (E.D. Pa. 1993).  "A contrary holding would have the unjust effect of making the timeliness of any complaint submitted with a motion to proceed in forma pauperis depend upon the speed with which the court addresses the plaintiff's allegations of indigency."  Id. at 254-55.

In the matter before the Court, the events giving rise to this litigation occurred on December 29, 2005, giving Plaintiff until December 29, 2007, to commence federal litigation.

---

1.   Although Plaintiff asserts claims directly under the Constitution, such claims are not cognizable as written. Plaintiff may pursue violations of the United States Constitution against non-federal officials only under 42 U.S.C. § 1983.  Gagliardi v. Fisher, 513 F. Supp. 2d 457, 471 (W.D. Pa. 2007) (citing Smith v. Sch. Dist. of Phila., 112 F. Supp. 2d 417, 430 (E.D. Pa. 2000), Bivens v. Six Unknown Named Federal Narcotics Agents, 403 U.S. 388, 91 S. Ct. 1999 (1971)).  While Plaintiff has not cited to section 1983 as a basis for liability in his Amended Complaint, the Court remains cognizant of the duty to liberally construe a *pro se* plaintiff's pleadings and apply the applicable law, irrespective of whether the plaintiff has failed to mention it by name.  Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003).  With that principle in mind, the Court deems Plaintiff's constitutional claims to have been brought under section 1983.

Plaintiff filed his *in forma pauperis* application, accompanied by a copy of his Complaint, on December 31, 2007 – two days past the expiration date.  Although, at first blush, Plaintiff's Complaint appears to be untimely, such a ruling would disregard the well-established "prisoner mailbox" rule.  In Houston v. Lack, 487 U.S. 266, 188 S. Ct. 2379 (1988), the United States Supreme Court crafted the prisoner mailbox rule, providing that the date on which a *pro se* prisoner transmits documents to prison authorities for mailing is considered the actual filing date. Id. at 275, 108 S. Ct. at 2385.  Courts within the Third Circuit have repeatedly applied this mailbox rule to cases where the *pro se* prisoner signed and/or dated his filling within the proper time limit, but it was not docketed before the deadline.  See, e.g., Pendergrass v. Gray, Civ. A. No. 06-2247, 2006 WL 3165007, at *3 (E.D. Pa. Oct. 30, 2006) (citing Askew v. Jones, Civ. A. No. 04-3900, 160 Fed. Appx. 140 (3d Cir. Dec. 13, 2005)); Taylor v. Naylor, Civ. A. No. 1826, 2006 WL 1134940, at *3 (W.D. Pa. Apr. 6, 2006); Sabella v. Troutner, Civ. A. No. 05-0427, 2006 WL 229053, at *4 (M.D. Pa. Jan. 31, 2006)).

While the *in forma pauperis* application, in this case, was not officially docketed by the Court until December 31, 2007, it was signed and dated by Plaintiff on December 5, 2007. Pursuant to the applicable jurisprudence, December 5, 2007 thus constituted both the legal filing date of the application and the date the statute of limitations was tolled.  When the *in forma pauperis* application was granted on April 3, 2008, the statute of limitations resumed running. Plaintiff's original Complaint, which had been attached to his *in forma pauperis* application, was docketed by the Court that same day.  Under the mandates of the prisoner mailbox rule, the

Complaint was therefore filed prior to the expiration of the statute of limitations.[2]  Accordingly, the Court denies this portion of Defendant Fishtine's motion.

**B.**     **Whether Plaintiff's Amended Complaint Fails to State a Cognizable Cause of Action**

Alternatively, Defendant Fishtine argues that Plaintiff's Amended Complaint fails to state a cognizable cause of action against him pursuant to section 1983 under either the Eighth or the Fourteenth Amendments.  "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  Graham v. Connor, 490 U.S. 386, 393-94, 109 S. Ct. 1865, 1870 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3, 99 S. Ct. 2689, 2694, n.3 (1979)).  In order to state a cause of action under section 1983, a plaintiff must demonstrate both that "(1) the defendants acted under color of [state] law; and (2) their actions deprived [the plaintiff] of rights secured by the Constitution or federal statutes."  Anderson v. Davila, 125 F.3d 148, 159 (3d Cir. 1997).  Considering the Eighth and Fourteenth Amendment claims individually, the Court maintains one, but dismisses the other.

**1.**     **Eighth Amendment**

Plaintiff's first claim alleges that all Defendants violated the Eighth Amendment prohibition against use of excessive force.  Defendant Fishtine disputes this claim on the ground that he had no involvement in the challenged conduct.

_____

2.   The Amended Complaint in this case was filed on September 26, 2008.  Federal Rule of Civil Procedure 15(c)(1)(B) permits an amendment to a pleading to relate back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." FED. R. CIV. P. 15(c)(1)(B).  As Defendant Fishtine does not dispute that the Amended Complaint relates back to the date of filing of the original Complaint, (Def. Fishtine's Mem. Supp. Mot. Dismiss 3-4), this Court finds no basis on which to deny relation back.

The Eighth Amendment prohibits punishments inconsistent with "evolving standards of decency that mark the progress of a maturing society." Estelle v. Gamble, 429 U.S. 97, 102, 97 S. Ct. 285, 290 (1976) (quoting Trop v. Dulles, 356 U.S. 86, 101, 78 S. Ct. 590, 598 (1958)).  "In an excessive force claim, the central question is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Id. (quoting Hudson v. McMillian, 503 U.S. 1, 7, 112 S. Ct. 995, 999 (1992)).  To determine whether a correctional officer has violated the Eighth Amendment in his use of force, a court must consider:   (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of injury inflicted"; (4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them"; and (5) "any efforts made to temper the severity of a forceful response."  Whitley v. Albers, 475 U.S. 312, 321, 106 S. Ct. 1078, 1085 (1986) (citations omitted).  A plaintiff must also show that the defendant "acted with a sufficiently culpable state of mind and that the alleged wrongdoing was sufficiently serious to establish a constitutional violation."  Laudenberger v. Sciotti, Civ. A. No. 99-4155, 2000 WL 1130092, at *2 (E.D. Pa. Aug. 9, 2000).

It is well established that supervisory liability cannot be imposed under section 1983 on a *respondeat superior* theory.  Monell v. Dept. of Soc. Svcs., 436 U.S. 658, 691, 98 S. Ct. 2018, 2037 (1978).  Rather, "[a] defendant in a [§ 1983] action must have personal involvement in the alleged wrongs."  Rode v. Dellaciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Thus, to find a supervisor liable under section 1983, a plaintiff must "'show some affirmative conduct' by the supervisor 'which played a role in the violation.'"  Okocci v. Klein, 270 F. Supp.

9

2d 603, 612 (E.D. Pa. 2003) (quoting <u>Nieves v. Dragovich</u>, Civ. A. No. 698490, 1997 WL 698490, at *6 (E.D. Pa. Nov. 3, 1997)), <u>aff'd</u> 100 Fed. Appx. 127 (3d Cir. 2004), <u>cert. denied</u>, 543 U.S. 1061, 125 S. Ct. 878 (2005).  "A supervisor may be liable under 42 U.S.C. § 1983 for his or her subordinate's unlawful conduct if he or she directed, encouraged, tolerated, or acquiesced in that conduct."  <u>Ricker v. Weston</u>, 27 Fed. Appx. 113, 119 (3d Cir. 2002) (citing <u>Brown v. Muhlenberg Twp.</u>, 269 F.3d 205, 216 (3d Cir. 2001); <u>Blanche Road Corp. v. Bensalem Twp.</u>, 57 F.3d 253, 263 (3d Cir. 1995); <u>Baker v. Monroe Twp.</u>, 50 F.3d 1186, 1190-91 (3d Cir. 1995)).  "In other words, the supervisor's acts must be the 'moving force [behind] the constitutional violation.'"  <u>Id.</u> (quoting <u>City of Canton v. Harris</u>, 489 U.S. 378, 389, 109 S. Ct. 1197, 1205 (1989)).  For liability to ultimately attach, "the plaintiff must identify specific acts or omissions of the supervisor that evidence deliberate indifference and persuade the court that there is a relationship between the identified deficiency and the ultimate injury."  <u>Brown</u>, 269 F.3d at 216 (internal quotations omitted).

As noted above, Defendant Fishtine argues that the sole allegation against him is that he ordered that Plaintiff be placed in a psychiatric cell without clothing – an act that does not rise to the level of a constitutional violation.  Moreover, the Amended Complaint makes no allegation that Defendant Fishtine was actually the supervisor of the correctional officers, thereby making supervisory liability an impossibility.  Accordingly, he claims that, even taking Plaintiff's allegations as true, Plaintiff has failed to state an Eighth Amendment claim against him upon which relief can be granted.

While recognizing that Plaintiff's claim against Defendant Fishtine stands on tenuous grounds, the Court nonetheless remains wary of the principle that *pro se* pleadings,

10

"however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." <u>Haines v. Kerner</u>, 404 U.S. 519, 520, 92 S. Ct. 594, 596 (1972). "If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements." <u>Smith v. Hewitt</u>, Civ. A. No. 07-35, 2008 WL 686903, at *1 (W.D. Pa. Mar. 1, 2008). A liberal reading of the Amended Complaint suggests that, as a result of Plaintiff's initial refusal to go to the infirmary, Defendant Fishtine actually *instructed* the guards to physically seize and beat Plaintiff in order to bring him to infirmary – *i.e.* he was the "moving force" behind the violation. Dr. Fishtine was then aware of the additional beating at the infirmary and took no steps to intervene, thus evidencing deliberate indifference to Plaintiff's situation. Ultimately, he ordered a beaten Plaintiff into the psychiatric cell, without ensuring that he was given clothes or medical care. Such allegations, while perhaps inadequate to defeat a motion for summary judgment, are, when taken as true, sufficient to meet the lower standards imposed on a plaintiff at the motion to dismiss stage.

### 2. **Fourteenth Amendment**

Defendant Fishtine also moves to dismiss the Fourteenth Amendment claim against him on two grounds. First, he argues that the provisions of the Fourteenth Amendment refer to state actions exclusively, and not to the actions of private individuals. Second, he contends that a conditions of confinement claim by a prisoner is governed by the Eighth Amendment; the Due Process Clause does not subject an inmate's treatment by prison authorities to judicial oversight.

11

The Court agrees with this latter argument.[3]  "After conviction, the Eighth Amendment 'serves as the primary source of substantive protection . . . in cases . . . where the deliberate use of force is challenged as excessive and unjustified.'"  Graham v. Connor, 490 U.S. 386, 395 n.10, 109 S. Ct. 1865, 1871 n.10 (1989) (quoting Whitley v. Albers, 475 U.S. 312, 327, 106 S. Ct. 1078, 1088 (1986)); see also Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000).  "Any protection that [the Due Process Clause] affords convicted prisoners against excessive force is . . . at best redundant of that provided by the Eighth Amendment."  Id.; see also Smith, 2008 WL 686903, at *1 n.1 ("Although Plaintiff [a convicted prisoner] alleges that his Fourteenth Amendment due process rights were violated by the use of excessive force against him, such a claim only implicates the Eighth Amendment."); Cardone v. Hammond, Civ. A. Nos. 05-536, 05-600, 2006 WL 694773, at *1 (D. Del. Mar. 17, 2006) ("[E]xcessive force claims for those convicted of a crime are analyzed under the Eighth Amendment.").

Given that Plaintiff is a convicted prisoner afforded the protections of the Eighth Amendment, the Due Process Clause is merely duplicative and, thus, inapplicable.  Accordingly, the Court dismisses this claim as against Defendant Fishtine.

## IV.  CONCLUSION

---

3.   Defendant Fishtine's argument that he is not liable as an individual under the Fourteenth Amendment is mistaken.  Plaintiff's Fourteenth Amendment claim must be considered under 42 U.S.C. § 1983, which permits liability against an individual where the individual acted under color of state law, and where his or her actions deprived the plaintiff of rights secured by the Constitution or federal statutes.  Anderson v. Davila, 125 F.3d 148, 159 (3d Cir. 1997).  Even private individuals who are "jointly engaged with state officials in the challenged action, are acting 'under color of' law for purposes of § 1983 actions."  Dennis v. Sparks, 449 U.S. 24, 27-28, 101 S. Ct. 183, 186 (1980); see also Groman v. Twp. of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995) ("Where the actors are not state or municipal officials, but are private individuals or associations, we still must address whether their activity can nevertheless be deemed to be under color of law.").

In sum, the Court finds that Plaintiff initiated this litigation well within the statute of limitations.  Moreover, although the allegations of the Eighth Amendment claim against Defendant Fishtine are tenuous at best, the Court deems them sufficient to withstand a motion to dismiss.  Finally, the Court dismisses the Fourteenth Amendment claim as against Defendant Fishtine.  An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RALPH WILLIAM MCCLAIN, JR., | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SGT ALVERIAZ, LT. DOYLE, C.O. | : | |
| SHOVLIN, C.O. HUESBY, C.O. SEVERA | : | NO.  07-5551 |
| C.O. SANCHEZ, DR. FISHTINE, and | : | |
| JOHN DOES #1-3 | : | |

## ORDER

AND NOW, this *25th* day of *November*, 2008, upon consideration of Defendant

Mark Fishtine, M.D.'s Motion to Dismiss Plaintiff's Amended Complaint (Docket No. 28) and

the Response thereto of Plaintiff Ralph William McClain (Docket No. 37), it is hereby

**ORDERED** that the Motion is **GRANTED IN PART** and **DENIED IN PART** as follows:

1.     The Amended Complaint is deemed timely;

2.     Defendant Fishtine's Motion to Dismiss the Eighth Amendment claim
       against him is **DENIED**;

3.     Defendant Fishtine's Motion to Dismiss the Fourteenth Amendment claim
       against him is **GRANTED**.

It is so **ORDERED**.

BY THE COURT:

*s/ Ronald L. Buckwalter*
RONALD L. BUCKWALTER, S. J.